**PENNSYLVANIA HUMAN RELATIONS COMMISSION, Petitioner,**

v.

**SCHOOL DISTRICT OF PHILADELPHIA,** Respondent

and

**Harry and Annemarie Gwynne, Aspira of Pennsylvania, Intervenors.**

Commonwealth Court of Pennsylvania.

Decided June 13, 1995.

Michael Hardiman, Asst. Chief Counsel, for petitioner.

William H. Brown, III, for respondent.

Michael Churchill and Patricia A. Lowe, for intervenors.

## OPINION AND ORDER

SMITH, Judge.

This opinion and order concern the School District of Philadelphia's May 19, 1995 modifications to the Reform Plan it filed on February 15, 1995 pursuant to the Court's November 28, 1994 order requiring the School District to remedy the racial disparities in academic achievement and educational opportunity that exist in the public schools. In an opinion and order filed April 27, 1995, the Court required the School District to make various modifications to the Reform Plan to more fully comply with the Court's November 1994 order.

The Court found the Reform Plan to be in compliance or in substantial compliance in many areas. Those areas included, among others, plans to provide: full-day kindergarten to all eligible children in racially isolated schools by September 1995 and all schools by September 1996; reduced class sizes; class leveling by the end of the second week of school; more certified substitute teachers for racially isolated schools; a comprehensive school safety plan; and in-school accommodation and suspension rooms.

■ The Court required further modifications to the Reform Plan in areas that included development of strategies to encourage the immediate involvement of parents throughout the public schools; curriculum standards and forms of assessment that govern what teachers will teach and what students will learn; plans for a school self-evaluation process and school self studies *following* the development of a curriculum plan, and for providing more experienced teachers in racially isolated schools; measures to resolve the high student absenteeism and truancy rates faced by the School District, and a dress code; an equity formula for resource allocations and an organizational structure that ensures and focuses upon, among other things, effective and efficient supervision of school-based management and student academic achievement; and a process for giving priority to examination and

repair or replacement of racially isolated school buildings.

Because of the School District's subsequent modifications, further Court conference in this matter on June 9, 1995 and the School District's willingness to evaluate closely its reorganizational structure and to make necessary refinements, the Court finds the School District's plans to be in compliance or in substantial compliance with the Court's November 1994 and April 27, 1995 orders, except to the limited extend stated hereafter. The Court's conditional approval of the School District's plans, however, does not preclude the School District from immediately renewing its motion to join the Governor and Commonwealth of Pennsylvania in these proceedings and to proceed with its requests for funding from the Commonwealth, to be modified by the identification of further economies and continuing efforts to design an efficient and effective operation and to streamline central bureaucracy. Further, all budget expenditures for salaries, goods and services shall continue to be made by central accounting as previously ordered by this Court.

■ Issues remain concerning the School District's proposed cluster structure, and the Court consequently cannot yet approve those plans because further review, evaluation and modification is required by the School District working in cooperation with the Court and its Monitoring Committee. The School District must resolve continuing issues surrounding the development of controls and supervision of school-based management activities, incorporation of effective regional office supports, mechanisms to ensure consistent application of system-wide policies and an absolute need for an organizational structure with clearly defined lines of authority and cohesion between and among the various components.

■ The Court again emphasizes that much effort has been devoted to organizational restructuring and not enough attention given to school climate, safety and security issues, parental involvement, professional development, and the development of standards and other components that directly impact

upon student academic achievement. These areas will be closely scrutinized and monitored by the Court. Moreover, the Court reserves ruling on outstanding issues pertaining to desegregation strategies to be reported on by June 30, 1995; audit reports due August 1995; and analysis of bilingual education programs, and special admissions programs to be reported on by January 1996.

■ Finally, the School District adopted a budget on May 26, 1995 [1] that proposes to fund the Superintendent's Children Achieving agenda in the six clusters already created and to delay implementation, for example, of full-day kindergarten in all racially isolated schools by September 1995; in-house accommodation and suspension rooms in elementary, middle and high schools; reduced class sizes; and many other mandates of the Court's remedial order. The School District proposes in its adopted budget to fund full-day kindergarten in at risk schools only in the six clusters, full-time nurses in each school in the six clusters, teaching and learning and family resource networks in the six clusters and professional development of staff in the six clusters.

The School District is fully cognizant of its obligations under the Court's order and is aware that it may not rely upon a lack of additional state funding to avoid compliance. The Superintendent will make the necessary cut-backs in other areas to enable the provision of full-day kindergarten in all racially isolated schools by September 1995 as ordered. The School District is required to comply with the Court's order in all other respects and to make whatever amendments to its adopted budget that are necessary to carry out the Court's order.

The Court agrees with the legally sound position taken by the Human Relations Commission—the School District proposes to allocate resources to schools and students who have not been unlawfully discriminated against at the expense of students in racially isolated schools, who have been denied equal educational opportunities and a quality education by the School District. The effect of

the School District's adoption of its May 26, 1995 budget is to further deprive minority children attending racially isolated schools of an equal educational opportunity and the chance to improve their academic achievements, which this Court has already declared to be illegal and by law may not, and will not, sanction. *See Pennsylvania Human Relations Commission v. School Dist. of Philadelphia*, 161 Pa.Commonwealth Ct. 658, 638 A.2d 304 (1994).

IT IS NOW THEREFORE ORDERED as follows:

### *Teaching and Learning/Professional Development*

1. The School District shall continue the process of hiring kindergarten teachers and locating space to provide full-day kindergarten in all racially isolated schools by September 1995 and in all schools within the School District by September 1996.

2. The School District shall report by June 30, 1995 on its efforts to develop curriculum standards and forms of assessment, to be completed by January 1996, and on the involvement and participation of teachers, principals and parents in this process. The School District shall demonstrate its active participation, supervision and control over this process and shall delineate the functions performed by the Philadelphia Education Fund.

### *School Climate, Safety and Discipline*

3. The Court accepts the School District's representation that the proposed community liaison employees will perform essential functions performed by the home and school officers in addition to the liaison's other community support functions. The School District, however, shall continue to devise ways to reduce its high student absenteeism and truancy rates and to coordinate into a systemic strategy the proposals for reducing absenteeism and truancy contained in Appendix F to the Reform Plan Modifications filed May 19, 1995.

---

1. The School District's adopted budget (with excerpt) will be admitted into the record of these proceedings without objection of the parties.

The document will be identified as Court Exhibit K.

*Organizational Restructuring*

4. The School District shall evaluate along with the Court's Monitoring Committee the design and operations of the six existing clusters by June 30, 1995, and the School District shall make whatever additional modifications are necessary to satisfy the unresolved issues affecting organizational restructuring discussed in the foregoing opinion. During this process, the School District shall develop a diagram of its cluster plan with modifications made through June 9th and shall also allow input from parent organizations, teachers and principals, the Philadelphia Federation of Teachers, the City Council President and other Council Members, State Lawmakers and any others affected by the School District's cluster plan so as to ensure community support before full restructuring. The U.S. Department of Education, Regional Office, will assist in this process.

5. The School District shall not develop new clusters until the foregoing review and evaluation process is completed and an approval is given by the Court.